# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

LEVON TONAPETYAN,

        Petitioner,

   v.

TODD LYONS, et al.,

        Respondents.

No. 5:26-cv-02512-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I.    SUMMARY

Petitioner Levon Tonapetyan ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at an immigration detention facility in this district. In this habeas action, Petitioner challenges the legality of his re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking his liberty without notice, without a hearing, and without any individualized determination that detention was warranted.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on May 5, 2026—without notice, without a hearing, and without any individualized

determination that detention was warranted—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing at which the Government must justify the need to detain him.

## II.   FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Armenia. (Dkt. No. 8-1 at 2.) Petitioner entered the United States without inspection and was encountered by United States Customs and Border Patrol ("USCBP") on February 17, 2024. (Dkt. No. 8-1 at 4.) On that same date, USCBP served Petitioner with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.)

Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Petitioner represents that during this time he has maintained gainful employment at a bakery and is the sole financial provider for his household. (Dkt. No. 1 at 2.)

Petitioner was arrested on or about April 29, 2026, for violation of California Penal Code § 273.5(A), felony infliction of corporal injury on a spouse/cohabitant. (Dkt. No. 8-1 at 4.) Following Petitioner's arrest, ICE's Pacific Enforcement Response Center ("PERC") lodged an Immigration Detainer with the Glendale Police Department. *Id*. The Glendale Police Department declined to honor the Immigration Detainer and subsequently released Petitioner into the community. *Id*.  Petitioner's wife attests that she did not call the police, she did not make a complaint in relation to the incident, and she does not consider Petitioner to be a danger. (Dkt. No. 1 at 22.) Petitioner represents that he has no criminal convictions, and no criminal charges have

been filed as a result of his April 29, 2026, arrest. (Dkt. No. 1 at 4 and Dkt. No. 10.)

On May 5, 2026, ICE Enforcement and Removal Operations ("ERO") arrested Petitioner as he walked toward his place of employment. (Dkt. No. 8-1 at 3.) Petitioner asserts that following his arrest he has not received a hearing or any individualized determination as to whether his detention is necessary. (Dkt. No. 9 at 2-3.) Petitioner remains at the immigration detention facility as of the filing of the instant Petition. (Dkt. No. 1 at 13.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on June 11, 2026. (Dkt. No. 1.) Respondents filed their Answer (the "Answer") on June 19, 2026. (Dkt. No. 8.) Petitioner filed his Reply ("Reply") on June 22, 2026. (Dkt. No. 9.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.    DISCUSSION

Petitioner argues that his re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked his liberty without providing notice, without a pre-deprivation hearing, and without any opportunity to contest whether he posed a flight risk or a danger to the community. Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1225(b) during his removal proceedings because he was classified as an "arriving alien" during his initial inspection and was found inadmissible for lack of valid documentation. (Dkt. No. 8 at 4.) Respondents further contend that this Court should deny the Petition because Petitioner has not shown that Respondents lacked authority to detain him or that he is entitled to immediate

release. (Dkt. No. 8 at 4-5.)

**A. The Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Is Governed By 8 U.S.C. § 1226(a).**

Respondents assert that Petitioner's detention is governed under 8 U.S.C. § 1225(b)(1) because he "was classified as an 'arriving alien' during his initial inspection and was found inadmissible for lack of valid documentation." (Dkt. No. 8 at 4.)

For the reasons set forth below, having reviewed the record, the Court finds that Petitioner had previously been inspected, admitted, and placed in removal proceedings pursuant to 8 U.S.C. § 1226(a) at the time of his May 5, 2026, re-detention. Petitioner has a liberty interest and thus may not be detained without adequate constitutional protections.

Section 1226(a) applies to a noncitizen who is "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). In *Jennings v. Rodriguez*, the Supreme Court articulated its understanding of the differentiation between §§ 1225 and 1226. *Jennings v.*

4

*Rodriguez*, 583 U.S. 281, 289 (2018). "Jennings held the Government may 'detain certain [noncitizens] seeking admission into the country' under § 1225(b) while § 1226 'authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1101 (C.D. Cal. 2025), judgment entered sub nom. *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025) (quoting *Jennings*, 583 U.S. at 289).

Respondents do not dispute, and the documents in Respondents' evidentiary submission before the Court demonstrate that Petitioner was previously encountered by USCBP on February 17, 2024, and released on parole pending the outcome of his removal proceedings. (Dkt. No. 8-1 at 2.) Respondents correctly note that the express language of § 1225(b)(1)(A)(ii) determines that the statute applies to a noncitizen "who is *arriving* in the United States." (emphasis added). (Dkt. No. 8 at 3.) Respondents cite to no authority to support the notion that Petitioner's classification as an "arriving alien" during his initial inspection on February 17, 2024, somehow extinguishes his prior admission on parole, and the fact that he has been residing in the United States for over two (2 years) pending the outcome of his removal proceedings. On the record before the Court, Respondents have failed to demonstrate how Petitioner could plausibly be classified a noncitizen "arriving in the United States" or an "applicant for admission" under the language of § 1225, where he has been residing in the United States for over two (2 years) and has previously been admitted into the country on parole.

As such, consistent with the reasoning in *Jennings,* the express language of the Immigration and Nationality Act (the "INA"), and other courts in this district, the Court finds that Petitioner was a noncitizen already in the country pending the outcome of his removal proceedings at the time of his sudden re-detention on May 5, 2026. Therefore, Petitioner's detention is governed under 8

5

U.S.C. § 1226(a), and his liberty interest may not be revoked absent the constitutional protections afforded to noncitizens detained pursuant to this section.

**C. Respondents' Deprivation of Petitioner's Liberty Without Notice, a Hearing, or Any Individualized Determination that his Detention is Warranted Violates Due Process.**

Petitioner argues that his sudden re-detention without notice, without a hearing, and without any individualized determination that detention was warranted—after more than two years of residing freely in the community following his release on parole by USCBP—violates the Fifth Amendment's guarantee of due process.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91.

When USCBP paroled Petitioner into the United States upon their initial encounter on February 17, 2024 (Dkt. No. 8-1 at 2), it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest.

424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

### 1. Private Interest

Petitioner argues that his sudden re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents deprived him of the ability to contest whether he posed a danger or flight risk before revoking his conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and

probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking his release and re-detaining him absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts he lived free from physical restraint for over (2) years, he has maintained gainful employment at a bakery, and he is the sole financial provider for his household. (Dkt. No. 1 at 2.) Petitioner further contends that he has no criminal convictions, and no criminal charges had been filed against him at the time of his re-detention on May 5, 2026. (Dkt. No. 1 at 4 and Dkt. No. 10.) While Petitioner remained subject to the conditions of his parole during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025)

(quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to provide Petitioner with adequate pre-deprivation process creates a significant risk of erroneous deprivation. Respondents provided no notice, no pre-deprivation hearing, and no opportunity to contest whether he posed a flight risk or a danger to the community. (Dkt. No. 9 at 2-3).

The procedure employed here creates a substantial risk of error. Petitioner was suddenly arrested as he walked toward his place of employment. (Dkt. No. 8-1 at 3.)  As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a re-detention at a routine appointment without prior notice, likewise concluded

that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

The record indicates that upon their initial encounter with Petitioner, USCBP served him with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.) Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Yet despite Petitioner's more than two (2) years of residence, maintaining gainful employment and residing freely in the community, Respondents provided no advance process to assess whether revoking his release would further the permissible purposes of immigration detention. Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

### 3. Government Interest

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who the Government has previously found capable of residing safely in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is

minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to re-detention. Nor do Respondents identify any individualized risk posed by Petitioner at the time of his re-arrest. Under

11

*Mathews*, the Government's interest in bypassing pre-deprivation process in these circumstances is minimal.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on May 5, 2026, without adequate pre-deprivation process, violated due process and that he should be released forthwith.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Levon Tonapetyan's (A#244-401-241) immediate release and restoration of liberty to the conditions existing at the time of his detention on May 5, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be

provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.


DATED:   July 21, 2026


_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE